UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY BANK OF AMERICA MERRILL LYNCH TRUST 2016-C31, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2016-C31,<br><br>                        Plaintiff,<br><br>       -against-<br><br>WILLIAM S. ACHENBAUM and CHARLES HERZKA,<br><br>                        Defendants. | Civil Action No. 1:20-cv-03678 |

## COMPLAINT

Plaintiff Wilmington Trust, National Association, as Trustee for Morgan Stanley Bank Of America Merrill Lynch Trust 2016-C31, Commercial Mortgage Pass-Through Certificates, Series 2016-C31 ("Plaintiff" or "Lender"), asserts this action against Defendants William S. Achenbaum and Charles Herzka and, in support thereof, alleges as follows:

## SUMMARY OF COMPLAINT

1.     Plaintiff brings this action to recover more than $9 million due and owing under a Guaranty of Recourse Obligations dated September 8, 2016 ("Guaranty"), duly executed by Defendants William S. Achenbaum and Charles Herzka ("Achenbaum," "Herzka," and, collectively, "Guarantors"). A true and correct copy of the Guaranty is annexed hereto as Exhibit A.

## PARTIES

2.     Plaintiff is the holder of certain Loan Documents, defined below, that are the subject of this lawsuit.

3. Defendants William S. Achenbaum and Charles Herzka are the guarantors of certain obligations relating to the Loan Documents, as further defined and described below.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

5. First, as stated in Paragraph 1 and outlined in Paragraphs 46-48 *infra*, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Second, there is complete diversity of citizenship between Plaintiff and Guarantors.

7. Plaintiff is a trust ("The Trust"). The Trust is a "real estate mortgage investment conduit" created under the Internal Revenue Code, 26 U.S.C. § 860D and whose citizenship is determined by the citizenship of its trustee. *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 180 F. Supp. 2d 465, 468–69 (S.D.N.Y. 2001).

8. Wilmington Trust, a national banking association, is the trustee of the Trust. Wilmington Trust is a national banking association with its main office located in Wilmington, Delaware, and is thus a citizen of that state for jurisdictional purposes. 28 U.S.C. § 1348; *see also Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006).

9. Both Guarantors are individuals and citizens of the state of New York.

10. Venue is properly vested in this district pursuant to 28 U.S.C. § 1391(b) because the Guarantors agreed, in Section 6.3 of the Guaranty, that:

> Any legal suit, action or proceeding against Lender or Guarantor arising out of or relating to this Guaranty may at Lender's option be instituted in any Federal or State court in the City of New York, County of New York, pursuant to Section 5-1402 of the New York General Obligations Law. Guarantor waives any objections which it may now or hereafter have based on venue and/or forum non conveniens of any such suit, action or proceeding, and Guarantor hereby irrevocably submits to the jurisdiction of any such court in any suit, action or proceeding.

## FACTS

**I.     September 8, 2016 Loan Documents.**

11.     On September 8, 2016, Achenbaum executed a promissory note to UBS AG in the principal amount of $8,250,000 ("Note") on behalf of an entity named Fulton Hotel, LLC ("Borrower").  A true and correct copy of the Note is annexed hereto as Exhibit B.

12.     The Note was executed in exchange for a loan in the same amount to fund Borrower's acquisition and operation of the Ramada Plaza Atlanta Capitol Park Hotel in Atlanta, Georgia ("Loan").  The Loan was and is secured, in part, by the subject hotel and its underlying real property ("Property").

13.     The Loan's closing documents consisted of, among other things, the Note, the Guaranty, an Assignment of Rents, and a loan agreement ("Loan Agreement") which set forth the particulars of the lending relationship between UBS AG and Borrower (collectively, "Loan Documents").  A true and correct copy of the Loan Agreement is annexed hereto as Exhibit C.

14.     On November 14, 2016, UBS AG assigned all right, title and interest in the Loan Documents to the Trust as part of a securitization.  Plaintiff Wilmington Trust, National Association, as Trustee for Morgan Stanley Bank of America Merrill Lynch Trust 2016- C31, Commercial Mortgage Pass-Through Certificates, Series 2016-C31, is therefore the owner, holder and beneficiary of all the Loan Documents – including the Guaranty, the Note, and the Loan Agreement – and is the "Lender" as that term is used in the Loan Documents.

15.     Rialto Capital Advisors, LLC ("Rialto") is the special servicer for the Trust and, in that capacity, Rialto administers the Loan Documents on behalf of the Plaintiff.

16.     New York law governs the Loan Documents, including the Guaranty, the Note, and the Loan Agreement.  (Ex. A § 6.3; Ex. B § 9; Ex. C § 11.3.)

17.     The Loan Agreement provides that the "Debt shall immediately and automatically

become due and payable" upon the occurrence of certain enumerated Events of Default. (Ex. C § 10.1(b).) "Debt" means "the Outstanding Principal Balance, together with all interest accrued and unpaid thereon, and all other sums due to Lender in respect of the Loan under the Note, this Agreement or any other Loan Document." (*Id*. at 9.)

18. Among other things, Events of Default include: (a) if Borrower – or its sole member Fulton Capital, LLC (the "Sole Member") – "fails or admits its inability to pay debts generally as they become due"; and (b) if Borrower "breaches any material representation, warranty or covenant in Section 3.1.24 hereof." (Ex. C §§ 10.1(a)(vii), (xiv).) The Borrower has no contractual right to cure any of the foregoing Events of Default.

19. In Section 3.1.24 of the Loan Agreement, Borrower made multiple representations, warranties and covenants running "until such time as the Debt shall be paid in full," including that Borrower: (a) "has paid its debt and liabilities . . . from its assets as the same became due"; (b) "has paid and shall pay its own liabilities and expenses . . . from its own funds"; and (c) "has paid and shall pay from its assets all obligations of any kind incurred." (Ex. C §§ 3.1.24(f), (v), (w).)

20. Borrower further agreed that it would "not take or permit any action that would result in Borrower or Sole Member not being in compliance with the representations, warranties, and covenants set forth in Section 3.1.24." (Ex. C § 4.2.13.)

21. Under the Loan Agreement, any Event of Default constitutes a "Cash Management Trigger Event." In Section 2.7.1(b) of the Loan Agreement, Borrower agreed that, upon the occurrence of a Cash Management Trigger Event, Borrower would deliver all Rents to a Clearing Account established for Plaintiff's benefit as follows:

> (b) Upon the first occurrence of a Cash Management Trigger Event, Borrower shall cause all Rents to be delivered directly to the Clearing Account. In

4

accordance with the Clearing Account Agreement, Borrower shall, or shall cause Manager to, (i) deliver irrevocable written instructions to all tenants under Leases to deliver all Rents payable thereunder directly to the Clearing Account and (ii) deliver irrevocable written instructions to each of the credit card companies or credit card clearing banks with which Borrower or Manager has entered into merchant's agreements to deliver all receipts payable with respect to the Property directly to the Clearing Account. Notwithstanding anything to the contrary contained herein or in any other Loan Documents, in the event Borrower or Manager shall receive any amounts constituting Rents, Borrower shall, and shall cause Manager to, deposit all such amounts received by Borrower or Manager into the Clearing Account within two (2) Business Days after receipt thereof.

22. The Loan Agreement defines "Rents" to include:

all rents, rent equivalents, moneys payable as damages (including payments by reason of the rejection of a Lease in a Bankruptcy Action) or in lieu of rent or rent equivalents, royalties (including, without limitation, all oil and gas or other mineral royalties and bonuses), income, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other consideration of whatever form or nature received by or paid to or for the account of or benefit of Borrower, Manager, or any of their respective agents or employees from any and all sources arising from or attributable to the Property, including, without limitation . . . obligations now existing or hereafter arising or created out of the sale, lease, sublease, license, concession or other grant of the right of the use and occupancy of property . . .

23. The Loan is a limited recourse loan: upon the happening of a specified event, the outstanding Debt on the Loan "shall be fully recourse to Borrower." (Ex. C § 11.22.) In particular, Plaintiff can seek monetary relief from the Borrower upon the occurrence of specific events identified in Section 11.22 as (a) "Springing Recourse Events," and (b) "Borrower's Recourse Liabilities." (*Id.*)

24. Among other things, Section 11.22 identifies one Springing Recourse Event as follows: "the Debt shall be fully recourse to Borrower in the event that . . . Borrower fails to obtain Lender's prior consent to any Indebtedness or any voluntary Lien encumbering the Property or any portion thereof or interest therein except, in each case, to the extent expressly permitted by this Agreement or the other Loan Documents." (*Id.*)

5

25. Among other things, Section 11.22 identifies one Borrower's Recourse Liability as follows: "Borrower shall be personally liable for . . . the misappropriation or conversion by Borrower, Guarantor, or any Affiliate of Borrower or Guarantor, of Rents." (*Id.*)

26. Article 8 of the Note provides: "The provisions of Section 11.22 of the Loan Agreement are hereby incorporated by reference into this Note to the same extent and with the same force as if fully set forth herein." (Ex. B § 8.)

27. As discussed further below, the Borrower's breaches of the foregoing Loan Document provisions have triggered Guarantors' obligations under the Guaranty.

## II.     Guarantors "Irrevocably and Unconditionally" Guaranteed Payment.

28. Achenbaum and Herzka executed a Guaranty of Recourse Obligations, *i.e.*, the Guaranty, in which they each "irrevocably and unconditionally guarantee[d] payments to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise." (Ex. A § 1.1(a).)

29. The Guaranty provides that capitalized terms used therein have the same meaning as set forth in the Loan Agreement. The term "Guaranteed Obligations" is defined by reference to Section 11.22 of the Loan Agreement—it "means (i) Borrower's Recourse Liabilities and (ii) from and after the date that any Springing Recourse Event occurs, payment of the entire Debt." (Ex. A § 1.1(b).)

30. In the Guaranty, Guarantors further agreed that:

   a. their liabilities and obligations "shall not be reduced, discharged or released because or by reason of any existing or future offset, claim or defense (other than actual payment of the Guaranteed Obligations to Lender) of Borrower or any other Person." (Ex. A § 1.3.)

6

b. "If all or any part of the Guaranteed Obligations shall not be punctually paid when due, whether at demand, maturity, acceleration or otherwise, Guarantor shall, immediately upon demand by Lender . . . pay in lawful money of the United States of America, the amount due on the Guaranteed Obligations to Lender." (*Id*. § 1.4.)

c. it "shall not be necessary for" Lender, "in order to enforce the obligations of" the Guaranty to "exhaust any remedies available to Lender against any collateral which shall ever have been given to secure the Loan." (*Id*. § 1.5(v).)

d. if Guarantors breach or fail "to timely perform any provisions" of the Guaranty "upon demand by Lender," they are immediately liable for "all out-of-pocket costs and expenses (including court costs and reasonable attorneys' fees) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder, together with interest thereon at the Default Rate from the date requested by Lender until the date of payment to Lender." (*Id*. § 1.7.)

e. Guarantors' obligations "shall not be released, diminished, impaired, reduced or adversely affected" – and, indeed, Guarantors "waive[] any common law, equitable, statutory or other rights" – in relation to any of Borrower's "valid defenses . . . claims or offsets . . . which render the Guaranteed Obligations wholly or partially uncollectible from Borrower." (*Id*. § 2.4(v).)

f. Guarantors' liabilities and obligations "shall not be reduced, discharged or

released because of or by reason of any existing or future right of offset, claim or defense of Borrower or Guarantor against Lender." (*Id*. § 2.10.)

### III. Guarantors Breached Their Irrevocable and Unconditional Payment Obligations

31. In or about early 2018 – and continuing into 2020 – Borrower and its Sole Member breached several representations set forth in Sections 3.1.24 and 10.1 of the Loan Agreement. In particular:

   a. Borrower incurred undisclosed indebtedness from a third party without Plaintiff's written consent when it assumed the obligations of a loan made by Gansevoort Hotel Group to Sole Member. Sole Member used the proceeds of the loan – and not Borrower's funds or assets– to fund Borrower's operations through capital contributions to Borrower and which, as of August, 2019, exceeded $948,000;

   b. Borrower failed to pay debts when they became due on a Capital One credit card account for Sole Member, which was used to pay for Borrower's expenses and exceeded $480,000 in October of 2018; and

   c. Borrower failed to pay debts when they became due to the Georgia Department of Revenue of more than $470,000 in past due sales and use taxes.

32. Plaintiff never consented to any of the foregoing Borrower breaches, which are Events of Default under Sections 10.1(a)(vii) and 10.1(a)(xiv) of the Loan Agreement.

33. The foregoing breaches render the Debt immediately due and payable as Springing Recourse Events under Section 11.22 of the Loan Agreement because Borrower failed "to obtain Lender's prior consent to any Indebtedness or any voluntary Lien encumbering the Property or any portion thereof or interest therein."

34. Although not required by either the Note or Guaranty, Rialto, on behalf of Plaintiff, gave notice to Borrower and Guarantors on February 21, 2019, identifying the foregoing Springing Recourse Events, and advising them that the Debt was immediately due and payable. Rialto gave further notice to Borrower and Guarantors on January 16, 2020, February 21, 2020 and April 29, 2020.

35. Borrower also breached Section 2.7.1(b) of the Loan Agreement by failing to turn over to Plaintiff all Rents or any other income generated by, attributed to, or in any way related to Property as required by the Loan Documents.

36. In particular, in early 2020, Borrower received a series of nonrefundable deposits totaling $1 million in connection with a failed Hotel Purchase and Sale Agreement ("Nonrefundable Deposits").

37. The Nonrefundable Deposit constitutes Rents under the Loan Agreement.

38. Pursuant to Section 2.7.1(b) of the Loan Agreement, Borrower is and was at all relevant times obligated to pay such Rents to Plaintiff because a Cash Management Trigger Event – *i.e.*, an Event of Default – exists under the Loan Documents.

39. Section 3.1 of an Assignment of Leases executed by Borrower separately provides that the "Lender shall immediately be entitled to possession of all Rents" upon the occurrence of an Event of Default.

40. Borrower has failed to deliver the Nonrefundable Deposit to Plaintiff.

41. Instead, on February 14, 2020, Borrower's counsel informed Plaintiff's counsel that Borrower has spent $250,000 of the Nonrefundable Deposit. Separately, on or about April 6, 2020, at Borrower's instruction, Borrower's escrow agent released to Borrower $500,000 of the Nonrefundable Deposit that had been held in escrow, notwithstanding Plaintiff's express

assertion of a lien on such Rents.

42. Borrower's failure to deliver such Rents violates the terms of the Loan Documents, including Section 2.7.1(b) of the Loan Agreement.

43. Borrower's "misappropriation or conversion" of such Rents is a Borrower's Recourse Liability as set forth in Section 11.22 of the Loan Agreement.

44. On February 21, 2020, and again on April 29, 2020, Rialto, on behalf of Plaintiff, gave notice to Borrower and Guarantors that Borrower's ongoing misappropriation and conversion of the Nonrefundable Deposit was a Borrower's Recourse Liability that was immediately due and payable pursuant to the terms of the Loan Documents.

45. In its 2019 and 2020 notices, Rialto further advised Guarantors that the foregoing Springing Recourse Events and Borrower's Recourse Liabilities triggered the Guarantors' Guaranteed Obligations under Section 1.1(b) of the Guaranty.

46. As of no later than February 21, 2019, Guarantors owed Plaintiff payment of the entire Debt per the terms of the Guaranty, namely the Outstanding Principal Balance on the Note, together with all interest accrued and unpaid thereon, and all other sums due to Plaintiff in respect of the Loan under the Note, this Agreement or any other Loan Document.

47. As of March 25, 2020, the outstanding balance on the Note – and thus the total Debt due on the Guaranty – is $9,042,637.99.  The Interest Rate on the Note is 5% and, upon Default, the Loan Documents impose a Default Rate of 5% above the interest rate.  Guarantors' interest obligations continue to accrue at the rate of $1,177.77 per diem from March 25, 2020.

48. As of no later than April 29, 2020, Guarantors further owed Plaintiff $1 million as Borrower Recourse Liabilities.

49. To date, Guarantors have not paid Plaintiff as required under the Guaranty.

50. Plaintiff has incurred – and continues to incur – attorneys' fees to collect the amounts Guarantors owe under the Guaranty.

## COUNT I
### Breach of Guaranty: Springing Recourse Events

51. Plaintiff repleads, realleges, and incorporates herein by reference paragraphs 1 through 50 of the Complaint as if fully set forth herein.

52. The Guaranty is a valid and enforceable agreement.

53. Under the express terms of the Guaranty, Achenbaum and Herzka each "irrevocably and unconditionally guarantee[d] to Lender . . . the payment and performance of the Guaranteed Obligations," including full payment of the Debt upon the occurrence of a Springing Recourse Event.

54. At least three separate Springing Recourse Events under Section 11.22 of the Loan Agreement have occurred, thus requiring full payment of the Debt.  Each such Springing Recourse Event triggers Guarantors' Guaranteed Obligations under Section 1.1(b) of the Guaranty, obligating Guarantors to make full payment of the Debt.

55. Guarantors expressly acknowledged an indebtedness and the irrevocable and unconditional duty to fulfill the Guaranteed Obligations when due and without regard to any Borrower defense.  There are no conditions to Guarantors' payment obligations.

56. Plaintiff has complied with all of its obligations under the Guaranty.

57. Achenbaum has breached his obligations to make payment to Plaintiff under the Guaranty.

58. Herzka has breached his obligations to make payment to Plaintiff under the Guaranty.

59. Achenbaum and Herzka are jointly and severally liable for their breaches of the

Guaranty.

60. Plaintiff has been damaged in excess of $9,042,637.99 as a direct and proximate cause of the foregoing breaches by Achenbaum and Herzka under the Guaranty.

61. Plaintiff is entitled to its costs and attorneys' fees incurred in connection with the enforcement of the Guaranty.

## COUNT II
### Breach of Guaranty: Borrower's Recourse Liabilities

62. Plaintiff repleads, realleges, and incorporates herein by reference paragraphs 1 through 61 of the Complaint as if fully set forth herein.

63. The Guaranty is a valid and enforceable agreement.

64. Under the express terms of the Guaranty, Achenbaum and Herzka each "irrevocably and unconditionally guarantee[d] to Lender . . . the payment and performance of the Guaranteed Obligations," including payment of Borrower's Recourse Liabilities.

65. Borrower's misappropriation of – and refusal to deliver – Rents to Plaintiff during an Event of Default constitute Borrower's Recourse Liabilities under Section 11.22 of the Loan Agreement. Such Borrower's Recourse Liabilities triggers Guarantors' Guaranteed Obligations under Section 1.1(b) of the Guaranty, obligating Guarantors to pay Plaintiff $1 million payment under the Guaranty's terms.

66. Guarantors expressly acknowledged an indebtedness and the irrevocable and unconditional duty to fulfill the Guaranteed Obligations when due and without regard to any Borrower defense. There are no conditions to Guarantors' payment obligation.

67. Plaintiff has complied with all of its obligations under the Guaranty.

68. Achenbaum has breached his obligations to make payment to Plaintiff under the Guaranty.

69. Herzka has breached his obligations to make payment to Plaintiff under the Guaranty.

70. Achenbaum and Herzka are jointly and severally liable for their breaches of the Guaranty.

71. Plaintiff has been damaged in excess of $1 million as a direct and proximate cause of the foregoing breaches by Achenbaum and Herzka under the Guaranty.

72. Plaintiff is entitled to its costs and attorneys' fees incurred in connection with the enforcement of the Guaranty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Wilmington Trust, National Association, as Trustee For Morgan Stanley Bank of America Merrill Lynch Trust 2016-C31, Commercial Mortgage Pass-Through Certificates, Series 2016-C31 respectfully prays for judgment against defendants William S. Achenbaum and Charles Herzka as follows:

(a) awarding monetary judgment in favor of said plaintiff in an amount to be proven at trial, plus interest;

(b) awarding costs, disbursements, and attorneys' fees in this action; and

(c) granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
May 12, 2020

DUANE MORRIS LLP

By: s/ David T. McTaggart
David T. McTaggart
1540 Broadway
New York, New York 10036-4086
Tel.: (212) 471-1814
Fax: (212) 202 4931
dtmctaggart@duanemorris.com

*Attorneys for Plaintiff Wilmington Trust, National Association, as Trustee For Morgan Stanley Bank of America Merrill Lynch Trust 2016-C31, Commercial Mortgage Pass-Through Certificates, Series 2016-C31*